IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

FERNANDO G. LOPEZ, AN-1753,

                    Plaintiff(s),

        v.

SERGEANT CLOUS, et al.,

                    Defendant(s).

No. C 13-3870 CRB (PR)

ORDER REGARDING
DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT AND
REFERRING MATTER FOR
SETTLEMENT  PROCEEDINGS

(Dkt. 18)

        Plaintiff, a prisoner at San Quentin State Prison, filed a pro se complaint under 42 U.S.C. § 1983 alleging that on September 21, 2011, while he was driving on Southwest Expressway and Liegh Avenue in San Jose, Santa Clara "police officers" pulled him over, threw him out of his car and onto the ground, and proceeded to assault and beat him.  Plaintiff specifically alleges that Sergeant Clous and officers Nick Nguyen, Ken Henderson, Aric Enos, Justin Mead, Luis Martin and John Pate "beat me severely by punching me, and kicking me repeatedly to the point of me losing consciousness and then continued to punch and kick my face in."  Verified Compl. (dkt. 1) ¶ 11.

        Per order filed on December 17, 2013, the court found that, liberally construed, plaintiff's allegations state a cognizable § 1983 claim for damages against Sergeant Clous and officers Nick Nguyen, Ken Henderson, Aric Enos, Justin Mead, Luis Martin and John Pate, and ordered the U.S. Marshal to serve them.  Defendants now move for summary judgment on the ground that there are no material facts in dispute and that they are entitled to judgment as a matter of law.  The officer defendants also claim that they are entitled to qualified immunity.  Plaintiff filed an opposition and defendants filed a reply.

**DISCUSSION**

A.      Standard of Review

Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. Id.

The moving party for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Cattrett, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. But on an issue for which the opposing party will have the burden of proof at trial, as is the case here, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." Id.

Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings to demonstrate the existence of a genuine dispute of material fact by "citing to specific parts of materials in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute." Fed. R. Civ. P. 56(c). A triable dispute of fact exists only if there is sufficient evidence favoring the nonmoving party to allow a jury to return a verdict for that party. Anderson, 477 U.S. at 249. If the nonmoving party fails to make this showing, "the moving party is entitled to judgment as a matter of law."

2

1   Celotex, 477 U.S. at 323.

2   B.   Legal Claim

3          Defendants argue that they are entitled to qualified immunity from

4   plaintiff's claim that they used excessive force in violation of the Fourth

5   Amendment.  Under Saucier v. Katz, 533 U.S. 194 (2001), the court must

6   undertake a two-step analysis when a defendant asserts qualified immunity in a

7   motion for summary judgment.  The court first faces "this threshold question:

8   Taken in the light most favorable to the party asserting the injury, do the facts

9   alleged show the officer's conduct violated a constitutional right?"  533 U.S. at

10  201.  If the court determines that the conduct did not violate a constitutional right,

11  the inquiry is over and the officer is entitled to qualified immunity.

12         If the court determines that the conduct did violate a constitutional right, it

13  then moves to the second step and asks "whether the right was clearly

14  established" such that "it would be clear to a reasonable officer that his conduct

15  was unlawful in the situation he confronted."  Id. at 201-02.  Even if the violated

16  right was clearly established, qualified immunity shields an officer from suit

17  when he makes a decision that, even if constitutionally deficient, reasonably

18  misapprehends the law governing the circumstances he confronted.  Brosseau v.

19  Haugen, 543 U.S. 194, 198 (2004); Saucier, 533 U.S. at 205-06.  If "the officer's

20  mistake as to what the law requires is reasonable . . . the officer is entitled to the

21  immunity defense."  Id. at 205.[1]

22         Under the Fourth Amendment, police officers may only use such force as

23  is "objectively reasonable" under the circumstances.  Graham v. Connor, 490

24  ────────────────

25         [1]Although the Saucier sequence is often appropriate and beneficial, it is
    not  mandatory.  A court may exercise its discretion in deciding which prong to
26  address first, in light of the particular circumstances of each case.  See Pearson v.
    Callahan,  555 U.S. 223, 236 (2009).
27

28                                            3

U.S. 386, 397 (1989).  To determine whether the force used was reasonable, courts balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake. Id. at 396.  The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.  Id.  Because the reasonableness test is not capable of precise definition or mechanical application its proper application requires careful attention to the facts and circumstances of each particular case, including "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id.

In addition, the court's consideration of "reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation."  Id. at 396-97.  Nor every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment.  Id. at 396.

        1.    Defendants' evidence

In support of their motion for summary judgment and qualified immunity, defendants submitted various declarations and documentary evidence showing the following facts:  On September 21, 2011, Santa Clara Police Department (SCPD) officers received information pertaining to the whereabouts of plaintiff, who was a possible arson suspect and had an outstanding warrant for an unrelated assault.  Martin Decl. (dkt. 25) ¶¶ 2-3; Mead Decl. (dkt. 26) ¶¶ 2-3; Nguyen Decl. (dkt. 27) ¶¶ 2-3.  After conducting surveillance at the apartment residence the officers believed plaintiff to be, Sergeant Clouse and Detective

Thompson followed another resident of the apartment away from the residence and stopped her.  Clouse Decl. (dkt. 22) ¶ 4.  She informed them that she knew plaintiff, that he was hostile to the police, would "fight or run" if contacted by the police, and might have a sawed-off shotgun in his possession.  Id.  Clouse relayed this information to the officers who were still surveying the residence.  Id. ¶ 5.

Shortly after, officers Martin and Mead, still surveying the residence, observed plaintiff get into a car and drive away from the residence.  Martin Decl. ¶¶ 4-6; Mead Decl. ¶¶ 4-5. They followed plaintiff in an unmarked SCPD vehicle, and Officer Nguyen followed in another unmarked vehicle behind Mead and Martin.  Nguyen Decl. ¶ 5; Martin Decl. ¶ 6; Mead Decl. ¶¶ 5-6.  The three officers followed plaintiff onto the Southwest Expressway and continued to follow him until he pulled over to the right curb and parked.  Mead Decl. ¶ 6; Nguyen Decl. ¶ 6.  Believing that plaintiff suspected the police was following him and might be planning an escape, Martin parked his vehicle in front of plaintiff's to prevent him from driving forward.  Martin Decl. ¶ 8.  Nguyen positioned his vehicle one hundred feet behind plaintiff's to prevent him from driving backward.  Martin Decl. ¶ 9; Mead Decl. ¶ 6; Nguyen Decl. ¶ 6.  Mead then exited his vehicle (which Martin was driving) with his pistol drawn and yelled "Stop! Police."  Mead Decl. ¶ 7.  Plaintiff immediately drove in reverse against oncoming traffic and towards Nguyen's vehicle, stopping just before colliding with it.  Martin Decl. ¶ 6; Mead Decl. ¶ 8; Nguyen Decl. ¶ 10.

After Mead got back in the car with Martin, the three officers again used their two vehicles to box in plaintiff.  Martin Decl. ¶ 11; Mead Decl. ¶ 8. All three officers exited their vehicles and approached plaintiff with pistols drawn.  Martin Decl. ¶ 12; Mead Decl. ¶ 9; Nguyen Decl. ¶ 7.  They all identified themselves as police and commanded plaintiff to get out of his car.  Id.  Plaintiff

did not respond, so Nguyen opened the car door and Martin and Nguyen pulled plaintiff out of his car.  Martin Decl. ¶ 12; Nguyen Decl. ¶ 8.

After the officers got plaintiff onto the asphalt face down, plaintiff went rigid and began resisting arrest by tugging his body away from the officers and by tucking his arms and hands underneath his chest and waist area.  Martin Decl. ¶ 13; Mead Decl. ¶ 10; Nguyen Decl. ¶ 8.  Mead placed his left knee on plaintiff's upper back to prevent him from moving.  Mead Decl. ¶ 11.  The officers repeatedly ordered plaintiff to give them control of his hands, but plaintiff refused and continued to tuck them underneath his waist area.  Martin Decl. ¶ 13; Mead Decl. ¶ 10.  In an attempt to get control of plaintiff's hands, Martin punched plaintiff in the left torso ten times and delivered two knee strikes to the same area.  Martin Decl. ¶¶ 13, 14.  Nguyen also punched plaintiff five times in the middle of his back, but to no avail.  Nguyen Decl. ¶¶ 10-11.  Fearing that plaintiff might be reaching for a weapon carried near his waistband, Mead struck plaintiff in the right side of his face three tines in order to bring plaintiff's hands towards his face.  Mead Decl. ¶¶ 12-13.  Throughout this entire struggle, the officers and plaintiff were at risk of being struck by cars passing by in the next lane.  Clouse Decl. ¶ 7;  Mead Decl. ¶ 12; Nguyen Decl. ¶ 10. Eventually, the officers gained control of plaintiff's hands, handcuffed him and pulled him onto the sidewalk.  Martin Decl. ¶ 15; Mead Decl. ¶ 13; Nguyen Decl. ¶ 12.

At around the time the three officers handcuffed plaintiff, Sergeant Clouse arrived on the scene and called for a transport to take plaintiff to the SCPD station.  Clouse Decl. ¶ 9.  Officer Enos was dispatched to transport plaintiff to the station.  Enos Decl. (dkt. 23) ¶¶ 3-4.  Plaintiff was later transported to Valley Medical Center to be treated for his injuries.  Id. ¶ 6.  Enos waited with plaintiff while he was treated.  Id.  Officer Pate was dispatched to Valley Medical Center

to transport plaintiff back to the police station.  Pate Decl. (dkt. 28) ¶ 3.  Pate transported plaintiff to the station and booked his blood sample into the evidence room.  Id. ¶ 4.

Detective Henderson was not present during plaintiff's encounter with SCPD officers on September 21, 2011.  Henderson Decl. (dkt. 24) ¶ 2.

### 2. Plaintiff's evidence

In support of his claim of use of excessive force during arrest, plaintiff submitted a verified complaint and declaration showing the following facts:  Plaintiff was driving eastbound on the Southwest Expressway when two undercover police officers pulled him over.  Verified Compl. ¶ 10; Lopez Decl. (dkt. 32-1) at 1.  Plaintiff immediately pulled over.  Lopez Decl. at 1.  Instantly, officers Martin, Mead and Nguyen surrounded plaintiff's car and pointed their pistols at his head.  Id.  Officer Nguyen opened the car door and, with Officer Martin's help, pulled plaintiff out of the car and threw him onto the ground.  Id.  Plaintiff did not resist.  Id. at 2.  But the officers nonetheless proceeded to punch plaintiff's face and kick plaintiff's ribs repeatedly.  Id.; Verified Compl. ¶ 11.  As plaintiff was about to lose consciousness, the officers pulled plaintiff's arms behind his back and dislocated his shoulder.  Id. ¶ 12.  After handcuffing plaintiff, the officers continued to punch and kick plaintiff's back, arms and face.  Id. ¶ 13.

### 3. Analysis

While the test for reasonableness is often a question for the jury, this issue may be decided as a matter of law if, in resolving all factual disputes in favor of the plaintiff, the officers' force was "objectively reasonable" under the circumstances.  Gregory v. County of Maui, 523 F.3d 1103, 1108 (9th Cir. 2008); Scott v. Henrich, 39 F.3d 912, 915 (9th Cir. 1994).  Under the circumstances

described by the facts set forth by defendants, the use of force by officers Martin, Mead and Nguyen in the course of restraining and detaining plaintiff appears to have been objectively reasonable.  Plaintiff was resisting arrest by tucking his arms and hands under his chest and waist area, and ignoring repeated requests to let out his hands so he could be handcuffed.  The officers were fearful that plaintiff was armed with a weapon and would attempt to use it if they did not gain control of his hands.  Additionally, the officers were in close proximity to passing traffic and at great risk of being struck by a car if they could not quickly restrain plaintiff and diffuse the situation.  Under these circumstances, the force used by officers Martin, Mead and Nguyen in order to gain control of plaintiff's hands may be said to have been objectively reasonable.  Cf. Marquez v. City of Phoenix, 693 F.3d 1167, 1174-76 (9th Cir. 2012) (officers did not use excessive force in tasing a suspect after they pushed past a barricade and entered a blood-spattered room, with an injured adult and a child in evident distress, and warned arrest-resisting suspect they would tase him if he did not comply with their commands).  And Sergeant Clous, Detective Henderson and officers Enos and Pate had nothing to do with the use of force against plaintiff.

Plaintiff's version of the facts is different.  In his opposing declaration, plaintiff alleges that, "[w]ithout any resistance from me at all," officers Martin and Nguyen "pulled me out of my vehicle and threw me onto the ground knocking the wind out of me."  Lopez Decl. at 1.  And "while on the ground, face down, lying on my stomach, with the wind knocked out of me and almost unconscious," Martin, Mead and Nguyen proceeded to "punch[] me in my face, kick[] me in the ribs and beat[] me repeatedly," while saying, "'he's a fuckin Norteno, beat his ass!'  Id. at 2.  There was no reason to beat me repeatedly because "I did not resist arrest." Id.

8

Plaintiff further alleges under penalty of perjury in his verified complaint, which the court will treat as an opposing declaration,[2] that:

> 12.    Once I began to lose consciousness, these officers pulled my arms behind my back to the point of dislocating my shoulder in order to handcuff my wrists.

> 13.    After being handcuffed with a dislocated shoulder, I was still being kicked and punched on my back, arms and face. In addition, these officers stomped my face into the ground repeatedly while in handcuffs.

Verified Complaint ¶¶ 12-13.

Even when viewing the evidence in the light most favorable to plaintiff, no reasonable jury could find that Sergeant Clous, Detective Henderson or officers Enos or Pate used excessive force against plaintiff in violation of his Fourth Amendment rights.  There is no evidence showing that Sergeant Clous, Detective Henderson or officers Enos or Pate actually and proximately caused the deprivation of plaintiff's Fourth Amendment rights.  See Leer v. Murphy, 844 F.2d 628, 634 (9th Cir. 1988) (conclusory allegations insufficient to defeat summary judgment).  Sergeant Clous, Detective Henderson and officers Enos and Pate are entitled to summary judgment as a matter of law.  See Celotex, 477 U.S. at 323.  But the same cannot be said of officers Martin, Mead and Nguyen.

When viewing the evidence in the light most favorable to plaintiff, a reasonable jury could find that officers Martin, Mead and Nguyen used excessive force against plaintiff.  Even if the use of some force was justified to promptly handcuff plaintiff and move him away from oncoming traffic, a reasonable jury could find that repeatedly punching and kicking plaintiff while he was on the

---

[2] A verified complaint may be treated as an opposing affidavit or declaration where, as here, plaintiff states under penalty of perjury that the allegations are true and correct, and the allegations are based on his personal knowledge.  See Schroeder v. McDonald, 55 F.3d 454, 460 & nn.10-11 (9th Cir. 1995).

9

1   ground, face down and not resisting arrest amounted to excessive use of force.

2   See Santos v. Gates, 287 F.3d 846, 853 (9th Cir. 2002) (even where some force is

3   justified, amount actually used may be excessive).  And a reasonable jury could

4   find that officers Martin, Mead and Nguyen used excessive force if they kicked,

5   punched and stomped plaintiff's face into the ground after plaintiff was

6   handcuffed.  See Drummond ex rel. Drummond v. City of Anaheim, 343 F.3d

7   1052, 1059 (9th Cir. 2003) (although some force was justified in restraining

8   mentally ill individual so he could not injure himself or officers, once he was

9   handcuffed and lying on ground without offering resistance, officers who knelt

10   on him and pressed their weight against his torso and neck despite his pleas for

11   air used excessive force).

12        Officers Martin, Mead and Nguyen are not entitled to summary judgment

13   on plaintiff's Fourth Amendment excessive force claim.  Nor are they entitled to

14   qualified immunity at this stage in the proceedings.  Whether Martin, Mead

15   and/or Nguyen may be said to have made a "reasonable mistake" of fact or law

16   entitling them to qualified immunity, Saucier v. Katz, 533 U.S. 194, 205 (2001),

17   will depend on the resolution of disputed facts and the inferences that may be

18   drawn therefrom.  See Santos, 287 F.3d at 855 n.12.  Until the jury makes such

19   decisions, a court cannot determine whether a reasonable officer could have

20   mistakenly believed that the degree of force used was lawful under the

21   circumstances.  See id.

22                              **CONCLUSION**

23        For the foregoing reasons, defendants' motion for summary judgment (dkt.

24   18) is GRANTED as to Sergeant Clous, Detective Henderson and officers Enos

25   and Pate, and DENIED as to officers Martin, Mead and Nguyen.  The court finds

26   that a referral to a magistrate judge for settlement proceedings is in order and

27

28                                  10

1    hereby REFERS this matter to Magistrate Judge Vadas for settlement
2    proceedings.  All other proceedings are stayed.
3          A settlement conference shall take place within 120 days of the date of
4    this order, or as soon thereafter as is convenient to Magistrate Judge Vadas'
5    calendar.  Magistrate Judge Vadas shall coordinate a time and date for the
6    conference with all interested parties and/or their representatives and, within ten
7    (10) days after the conclusion of the conference, file with the court a report
8    regarding the conference.
9          The clerk shall provide a copy of this order to Magistrate Judge Vadas.
10   SO ORDERED.
11   DATED:  August 19, 2014

                                        CHARLES R. BREYER
12                                      United States District Judge