IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FERNANDO G. LOPEZ,<br><br>          Plaintiff,<br><br>     v.<br><br>SERGEANT CLOUS, et al.,<br><br>          Defendants. | No. C 13-3870 CRB<br><br>**ORDER GRANTING WRIT OF HABEAS CORPUS AD TESTIFICANDUM** |

Plaintiff Fernando G. Lopez brings claims for excessive force under 42 U.S.C. section 1983. He alleges that Defendants – Santa Clara police officers – punched, kicked, and stomped on his face and body during an arrest for no good reason. See Am. Compl. (dkt. 49 ¶¶ 11-12). The officers admit they used blows to subdue Mr. Lopez but argue that they had to. See Opp'n (dkt. 74) at 3. The case is set for trial on November 14, 2016.

Mr. Lopez, now a prisoner at San Quentin, has petitioned for a writ of habeas corpus ad testificandum, which would allow him to take the stand despite being incarcerated. Pet. (dkt. 73) at 1. The officers oppose the petition, arguing that Mr. Lopez "is a violent and dangerous man" who should not be allowed near the courtroom. See Opp'n at 6. A district court may, in its discretion, allow a prisoner to testify in a civil trial. Wiggins v. Alameda Cnty., 717 F.2d 466, 468 n.1 (9th Cir. 1983). Four factors matter:

First, the Court must determine whether Mr. Lopez's in-court testimony would further the resolution of this case. See id. The answer is emphatically yes. Only Mr. Lopez and the involved officers witnessed the disputed encounter, and no video footage of it exists. See Pet. at 5. The case will hinge on who the jury believes. That makes Mr. Lopez's testimony crucial. See United States v. Mejia, 69 F.3d 309, 315-18 (9th Cir. 1995). What is more, any prisoner faces a built-in credibility deficit against police officers. So showing the jury clips of Mr. Lopez's deposition – taken in prison – or having him testify via video feed – from

1

prison – would just pile on.

Second, the Court must determine whether Mr. Lopez poses a security risk. <u>See</u> <u>Wiggins</u>, 717 F.2d at 468 n.1.  Mr. Lopez has, by all indications, been a model prisoner at San Quentin.  <u>See</u> Dawson Decl. (dkt. 73-1) Exs. 7-8.  And though he is serving time for assault with a deadly weapon, he committed that crime moments after finding a man in bed with his ex-girlfriend.  <u>See</u> <u>id.</u> Ex. 1 at 85:12-86:20.  That is enough under California law to reduce murder to manslaughter.  <u>See</u> Cal. Penal Code § 192(a).  It is also enough to convince the Court that Mr. Lopez poses no special threat, regardless of who attends trial and whatever tattoos he may have.

Third, the Court must consider the cost of transporting and supervising Mr. Lopez. <u>See</u> <u>Wiggins</u>, 717 F.2d at 468 n.1.  An official at San Quentin has already said that doing so would be "no problem" because it is something they do on "a regular basis."  <u>See</u> Dawson Decl. Ex. 10.  And in any event, costs matter but they do not control.

Fourth, the Court must consider whether to stay the case until Mr. Lopez is released over a year from now.  <u>See</u> <u>Wiggins</u>, 717 F.2d at 468 n.1.  The parties have prepared for trial and agree that the case should move forward.  <u>See</u> Pet. at 7; Opp'n at 8.

The Court GRANTS the writ.  Mr. Lopez will take the stand.

**IT IS SO ORDERED.**

Dated: October 24, 2016

CHARLES  R. BREYER
UNITED STATES DISTRICT JUDGE

2